UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

HUGUETTE FLORESTAL,                                 CIVIL ACTION NO.

                    Plaintiff,                      VERIFIED COMPLAINT

          -against-
                                                    PLAINTIFF DEMANDS A TRIAL
EXCEL AT WOODBURY FOR                               BY JURY
REHABILITATION AND NURSING, LLC,
LONG ISLAND CARE CENTER, INC.,
WEST LAWRENCE CARE CENTER, LLC,
WEST LAWRENCE CARE CENTER INC.,
WEST LAWRENCE CARE CENTER REALTY LLC,
WOODBURY CENTER FOR HEALTH CARE,
aka WOODBURY NURSING HOME, and
MAUREEN OUMMADE, Individually and in her
Official Capacity as Director of Nursing,

                    Defendants.
-------------------------------------------------------------X

          Plaintiff, HUGUETTE FLORESTAL, by her attorney Timothy P. Devane, Esq.,

complaining of the defendants, alleges as follows, upon information and belief:

I

JURISDICTION AND VENUE

1.        This action is brought to remedy discrimination on the basis of age in violation of

the Age Discrimination in Employment Act of 1967 (Pu. L. 90-202) (ADEA), as

amended, 29 U.S.C. §621 et seq., The Older Workers Protection Act,  42 U.S.C. §1981a,

42 U.S.C. §1983, 42 U.S.C. §1985.  Jurisdiction is based on 29 U.S.C. 626(e), 28

U.S.C. §§1331 and 1343(3)(4).

2.        Supplemental jurisdiction pursuant to 28 U.S.C. §1367 is sought to remedy

discrimination on the basis of age in violation of New York Executive Law, §290 et seq.

3.        Injunctive and declaratory relief, damages, including back pay, front pay, and all

associated benefits, attorneys fees and other appropriate legal and equitable relief are sought pursuant to the ADEA, as amended, 29 U.S.C., et seq., §42 U.S.C. §1988. Injunctive and declaratory relief, damages, including back pay, front pay, and all associated benefits, and damages for emotional pain and suffering, are sought under New York State Executive Law, §297(9).

4.  As Plaintiff is a resident of the County of Suffolk, New York venue is proper in this District pursuant to 29 U.S.C. §633(c) and 29 U.S.C. §1391(b).

II

## DETERMINATION BY THE U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

5.  The United States Equal Employment Opportunity Commission, after a thorough investigation, determined that Plaintiff was subjected to age discrimination. Attached as Exhibit A is the Determination of the Equal Employment Opportunity Commission. In response to Plaintiff's request for a Right to Sue, attached as Exhibit B is the Notice of the Right to Sue dated March 3, 2016.

III

## PARTIES

6.  Plaintiff was employed by the defendants since March 16, 1998 until the date of her unlawful termination on March 18, 2013.

7.  Plaintiff HUGUETTE FLORESTAL is a resident of the State of New York, County of Suffolk.

8.  At all times hereinafter mentioned, Defendant EXCEL AT WOODBURY FOR REHABILITATION AND NURSING, LLC was and still is a domestic corporation duly licensed to operate within the State of New York, with its principal place of business

located at 8533 Jericho Turnpike, Woodbury, New York 11797.

9.      At all times hereinafter mentioned, defendant EXCEL AT WOODBURY FOR

REHABILITATION AND NURSING, LLC was and still is a foreign corporation

authorized to do business within the State of New York.

10.      At all times hereinafter mentioned, defendant EXCEL AT WOODBURY FOR

REHABILITATION AND NURSING, LLC was and still is a business organization

authorized to do business within the State of New York.

11.      That defendant EXCEL AT WOODBURY FOR REHABILIATION AND

NURSING, LLC, at all times herein mentioned, transacted and carried on business within

the County of Nassau, State of New York.

12.      At all times herein mentioned, Defendant EXCEL AT WOODBURY FOR

REHABILITATION AND NURSING, LLC, expected, or should have reasonably have

expected, their acts to have consequences in the State of New York.

13.      At all times hereinafter mentioned, defendant LONG ISLAND CARE CENTER,

INC. was and still is a domestic corporation duly licensed to operate within the State of

New York with its principal place of business at 144-61 38th Avenue, Flushing, New

York 11354.

14.      At all times hereinafter mentioned, defendant LONG ISLAND CARE CENTER,

INC. was and still is a foreign corporation authorized to do business within the State of

New York.

15.      At all times hereinafter mentioned, defendant LONG ISLAND CARE CENTER,

INC. was and still is a business organization authorized to do business within the State of

New York.

16.     That defendant LONG ISLAND CARE CENTER, INC, at all times herein

mentioned, transacted and carried on business within the County of Nassau, State of New

York.

17.     At all times herein mentioned, Defendant LONG ISLAND CARE CENTER,

INC. expected, or should have reasonably have expected, their acts to have consequences

in the State of New York.

18.     At all times herein mentioned, defendant WEST LAWRENCE CARE CENTER,

LLC, was and still is a domestic corporation duly licensed to operate within the State of

New York, with its principal place of business at 1410 Seagirt Boulevard, Far Rockaway,

New York 11691.

19.     At all times hereinafter mentioned, defendant WEST LAWRENCE CARE

CENTER, LLC was and still is a foreign corporation authorized to do business within the

State of New York.

20.     At all times hereinafter mentioned, defendant WEST LAWRENCE CARE

CENTER, LLC was and still is a business organization authorized to do business within

the State of New York.

21.     That defendant WEST LAWRENCE CARE CENTER, LLC, at all times

hereinafter mentioned, transacted and carried on business within the County of Nassau,

State of New York.

22.     That defendant WEST LAWRENCE CARE CENTER, LLC expected, or should

have reasonably have expected, their acts to have consequences in the State of New York.

23.     At all times hereinafter mentioned, WEST LAWRENCE CARE CENTER, INC.

was and still is a domestic corporation duly licensed to operate within the State of New

York, with its principal place of business at 1410 Seagirt Boulevard, Far Rockaway, New York 11691.

24.     At all times hereinafter mentioned, defendant WEST LAWRENCE CARE CENTER, INC. was and still is a foreign corporation authorized to do business within the State of New York.

25.     At all times hereinafter mentioned, defendant WEST LAWRENCE CARE CENTER, INC. was and still is a business organization authorized to do business within the State of New York.

26.     That defendant WEST LAWRENCE CARE CENTER, LLC, at all times hereinafter mentioned, transacted and carried on business within the County of Nassau, State of New York.

27.     That defendant WEST LAWRENCE CARE CENTER, INC. expected, or should have reasonably have expected, their acts to have consequences in the State of New York.

28.     At all times hereinafter mentioned, defendant WEST LAWRENCE CARE CENTER REALTY LLC was and still is a domestic corporation duly licensed to operate within the State of New York, with its principal place of business at 76 Park Row, Lawrence, New York 11559.

29.     At all times hereinafter mentioned, defendant WEST LAWRENCE CARE CENTER REALTY LLC was and still is a foreign corporation authorized to do business within the State of New York.

30.     At all times hereinafter mentioned, defendant WEST LAWRENCE CARE CENTER REALTY LLC was and still is a business organization authorized to do business within the State of New York.

31.     That defendant WEST LAWRENCE CARE CENTER REALTY LLC expected, or should have reasonably have expected, their acts to have consequences in the State of New York.

32.     At all times hereinafter mentioned, the defendant WOODBURY CENTER FOR HEALTH CARE, aka WOODBURY NURSING HOME, was and still is a business organization authorized to do business within the State of New York.

33.     That defendant WOODBURY CENTER FOR HEALTH CARE aka WOODBURY NURSING HOME, at all times hereinafter mentioned, transacted and carried on business within the County of Nassau, State of New York.

34.     That defendant WOODBURY CENTER FOR HEALTH CARE aka WOODBURY NURSING HOME, expected, or should reasonably have expected, their acts to have consequences in the State of New York.

35.     At all times hereinafter mentioned, defendant EXCEL AT WOODBURY FOR REHABILITATION AND NURSING, LLC, owned, operated, managed, maintained, controlled, and supervised the nursing home known as Woodbury Center for Health Care aka Woodbury Nursing Home, located at 8533 Jericho Turnpike, Woodbury, New York 11797.

36.     At all times hereinafter mentioned, defendant LONG ISLAND CARE CENTER, INC. owned, operated, managed, maintained, controlled and supervised the nursing home known as Woodbury Center for Health Care aka Woodbury Nursing Home, located at 8533 Jericho Turnpike, Woodbury, New York 11797.

37.     At all times hereinafter mentioned, defendant LONG ISLAND CARE CENTER, INC. owned, operated, managed, maintained, controlled and supervised the nursing home

known as Woodbury Center for Health Care aka Woodbury Nursing Home, located at 8533 Jericho Turnpike, Woodbury, New York 11797.

38.     At all times hereinafter mentioned, defendant WEST LAWRENCE CARE CENTER, LLC owned, operated, managed, maintained, controlled and supervised the nursing home known as Woodbury Center for Health Care aka Woodbury Nursing Home, located at 8533 Jericho Turnpike, Woodbury, New York 11797.

39.     At all times hereinafter mentioned, defendant WEST LAWRENCE CARE CENTER INC. owned, operated, managed, maintained, controlled and supervised the nursing home known as Woodbury Center for Health Care aka Woodbury Nursing Home, located at 8533 Jericho Turnpike, Woodbury, New York 11797.

40.     At all times hereinafter mentioned, defendant WEST LAWRENCE CARE CENTER REALTY LLC owned, operated, managed, maintained, controlled and supervised the nursing home known as Woodbury Center for Health Care aka Woodbury Nursing Home, located at 8533 Jericho Turnpike, Woodbury, New York 11797.

41.     At all times hereinafter mentioned, defendant WOODBURY CENTER FOR HEALTH CARE aka WOODBURY NURSING HOME owned, operated, managed, maintained, controlled and supervised the nursing home known as Woodbury Center for Health Care aka Woodbury Nursing Home, located at 8533 Jericho Turnpike, Woodbury, New York 11797.

42.     At all times hereinafter mentioned, defendant MAUREEN OUMMADE, sued Individually and in her Official Capacity as Director of Nursing Services, was employed by the Defendants at Woodbury Center for Health Care aka Woodbury Nursing Home, located at 8533 Jericho Turnpike, Woodbury, New York 11797 and was Plaintiff's

supervisor and the individual who informed Plaintiff of her termination.

43.    Plaintiff was an employee of defendants as a Certified Nursing Assistant at the

location of 8533 Jericho Turnpike, Woodbury, New York 11797. Plaintiff considered

herself employed by WOODBURY CENTER FOR HEALTH CARE, formerly known as

WOODBURY NURSING HOME, based on the name of her employer on her work

experience there, including the name of her employer on paychecks and W2 statements.

However, in responding to the EEOC charge the Respondent identified itself as EXCEL

AT WOODBURY FOR REHABILITATION AND NURSING, LLC, a corporation

formed on June 20, 2012, prior to the date of Plaintiff's termination. Other corporate

defendants are therefore named as a result of affiliations with the other named defendants

in the event they are parent companies, affiliates, subsidiaries, or agents of the named

defendants EXCEL AT WOODBURY FOR REHABILITATION AND NURSING, LLC

or WOODBURY CENTER FOR HEALTH CARE, aka WOODBURY NURSING

HOME.

44.    Similarly, the Defendant MAUREEN OUMMADE was the Director of Nursing

Services for WOODBURY CENTER FOR HEALTH CARE, formerly known as

WOODBURY NURSING HOME, but the corporate entity employing her is claimed to

be EXCEL AT WOODBURY FOR REHABILITATION AND NURSING, LLC, or any

of the other named defendants in the event they are parent companies, affiliates,

subsidiaries or agents of the named defendants.

45.    The defendant(s) is a nursing home which provides care for elderly patients.

Defendants maintain offices at 8533 Jericho Turnpike, Woodbury, New York 11797.

46.    Defendants EXCEL AT WOODBURY FOR REHABILITATION, LLC, LONG

ISLAND CARE CENTER, INC., WEST LAWRENCE CARE CENTER, LLC, WEST
LAWRENCE CARE CENTER INC., WEST LAWRENCE CARE CENTER REALTY
LLC, and WOODBURY CENTER FOR HEALTH CARE, aka WOODBURY
NURSING HOME are employers within the meaning of the Age Discrimination in
Employment Act, in that they employ more than 20 employees, and the Human Rights
Law §292(5).

47.     The employees of Defendants, including the named defendant MAUREEN
OUMMADE, were supervisors of plaintiff and acted at all relevant times vicariously on
behalf of the employer.

IV

FACTUAL ALLEGATIONS COMMON TO<br>THE FIRST AND SECOND CAUSES OF ACTION

48.     On or about March 18, 2013 Plaintiff was terminated from her employment as a
Certified Nursing Assistant for the Defendants.

49.     Plaintiff had worked for the Defendants for 15 years prior to her unlawful
termination and was a diligent employee with no significant history of discipline
problems.  Plaintiff was 57 years old at the time of her termination.

50.     On or about March 3, 2013 while Plaintiff was on duty, one of her patients
needed to use the bathroom.  Plaintiff called another Certified Nursing Assistant, to help
her taking the patient to the bathroom.  While Plaintiff and the other Certified Nursing
Assistant were holding her, Plaintiff said turn, turn, keep turning.  The patient then said to
her, "Stop screaming at me! Bitch!"  After she called Plaintiff a bitch she reported
Plaintiff to the nurse saying that Plaintiff screamed at her.  On the day after the
incident happened, March 4, 2013, MAUREEN OUMMADE, (identified in Plaintiff's

Charge of Discrimination as "Mrs. Maurine"), the Director of Nursing Services (DNS), switched Plaintiff to a different floor, and she also suspended her for two days, to be served on March 8, 2013, and March 13, 2013. The Plaintiff was furthermore required to take sensitivity training on March 6, 2013, which the Plaintiff did. Other than the suspension dates, Plaintiff continued to work and perform her job to the best of her ability, as she had done for 15 years. The patient who said Plaintiff screamed at her was on psychotic medication and would often get very confused. Sometimes she would call 911 in the middle of the night and ask the police to bring her husband to the nursing home. Upon information and belief she died some date soon after the alleged incident due to unrelated causes.

51.     On the second day of the suspension, March 13, 2013, Plaintiff received a call at her house from Defendant MAUREEN OUMMADE. She said, "I just found out that you had abused a patient, you are terminated". When Plaintiff tried to get some information about why she terminated her, she said to Plaintiff, "I can not discuss that with you". Plaintiff then notified her union delegate. Ms. Oummade  told the union delegate the same thing that she told Plaintiff and she also added that there is nothing that the union delegate can do about it. Plaintiff called the union, but could not get anyone on the phone, and eventually had to drive to the office to speak with Mr. Michael.

52.     On March 14, 2013, Plaintiff received a phone call from Mrs. Maurine. She asked Plaintiff if she was the one who took care of the patient in room 249 on Tuesday, March 12, 2013. Plaintiff said yes, because she was in her assignment. Plaintiff asked was she crying? Ms. Oummade replied "I will call you back".

53.     On the next day, March 15, 2013 Ms. Oummade called Plaintiff around 1:00 P.M.

to try to set up a meeting with her at 2:00 P.M, only one hour later. She stated that it was very important that Plaintiff show up at her office at 2:00 P.M. Knowing how dangerous it would be to go to the meeting by herself, Plaintiff called Mrs. Nadia Joseph from her union for assistance only to find out that Ms. Oummade had said to her that she has proof that Plaintiff had abused the patient and the incident was reported to the state. Plaintiff went to the meeting that was eventually held on March 18, 2013 only to find out that she was fired. At the meeting, Ms. Oummade said, "You are no longer working for us". When the union delegate asked her about the write up, Mrs. Maurine said there is none. Then, she handed Plaintiff a blank sheet to sign, attesting that Plaintiff attended a meeting with her. Plaintiff did not sign the sheet but the union delegate did.

54.     On April 3, 2013, the last meeting about this matter was held, attended by the Vice-President of the union, Ms. Oummade, Mr. Michael, and Plaintiff. During the meeting, Ms. Oummade had to give a clear explanation about why she terminated Plaintiff. After stating that Plaintiff had abused a patient verbally and physically, the Vice-President of the union asked her, "Did you examine the patient" Ms. Oummade said yes. The Vice-President asked her "What did you see on her". She answered **"nothing"** (emphasis added). Then, the Vice-President asked about the report. Ms. Oummade said she sent it to the state. When the Vice-President asked for a copy of the report, she said that she does not have it. The Vice-President said, "You do not have a case". Then she pulled out a document which she called a "write up". On the back of that document was the blank sheet that Plaintiff had refused to sign with the delegate signature. She claimed that she had shown the document to Plaintiff on the previous meeting, but Plaintiff had refused to sign it. When the Vice President asked why no one

else has a copy, not knowing what to answer, Ms. Oummade abandoned the meeting. After about a half hour, the Vice President left because he was tired of waiting. After Mr. Michael, the other union member, went to look for her, he came back and proposed for Plaintiff to resign.

55. Plaintiff pursued her grievances through her union until she was informed by letter dated November 13, 2013 that the union would not be pursuing an arbitration of her case.

56. Plaintiff claims that she was terminated based on her age, in that Plaintiff was a valued employee since 1998, at least prior to any new ownership group running the nursing home, and that the excuse for termination was based on lies perpetuated by Ms. Oummade, in particular the accusation that Plaintiff's alleged conduct was "reported to the state", even though Plaintiff has never been informed of that by anyone other than Ms. Oummade verbally. Additionally, there was no objective evidence of abuse, and the patient was on psychotic medication, was very old and sick, and died shortly after the alleged incident.

57. Plaintiff claims that other workers of advanced age have been or will be terminated in order for the nursing home to hire younger, cheaper employees. Plaintiff was 57 years old at the time of termination.

58. As a result of this discharge, Plaintiff lost backpay and frontpay, including salary, retirement and pension benefits, loss of medical benefits, loss of promotion opportunity and normal pay raises, suffered economic hardship and emotional pain and suffering, the latter of which is an element of damages under New York State law.

59. Defendants have failed to effectively train its employees about preventing

unlawful discrimination on the basis of age, or about investigating or disciplining unlawful discrimination on the basis of age.

60.     Defendants' custom or policy of refusing to effectively investigate complaints of unlawful discrimination on the basis of age or to discipline offenders guilty of unlawful discrimination on the basis of age amounted to deliberate indifference on the part of the defendant.

V

FIRST CAUSE OF ACTION

61.     In unlawfully terminating plaintiff, defendants have discriminated against plaintiff on the basis of her age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. §621, et seq., and The Older Workers Protection Act. Defendants intentionally, willfully, and without justification, acted to deprive plaintiff, on the ground of her age of her rights, privileges and immunities, particularly her right to be free of discrimination on the basis of her age in the workplace. Defendants have a duty to provide and ensure a workplace for Plaintiff and other older employees, free of innuendo, intimidation and discriminatory animus, and to enforce the rules, regulations and laws necessary to protect her and other older employees from unlawful termination.

62.     The defendants, despite knowledge and adequate opportunity to learn of the misconduct of their agents, subordinates and employees, adopted, approved and ratified these acts, omissions and misconduct.

63.     Plaintiff has and will continue to suffer irreparable injury, loss of backpay and frontpay, including loss of income, loss of promotion opportunity, loss of pay raises, loss of employee benefits, including sick time, health benefits, pension, vacation time, and

seniority, as a result of defendants' discriminatory practices, unless and until this Court

grants relief.  Plaintiff also seeks liquidated damages pursuant to the ADEA based on the

willful nature of the defendants' conduct resulting in her termination.

64.     Although Plaintiff has attempted to mitigate her damages in continuing to work,

her overall salary has lessened in subsequent years since her termination, and she is

deprived of the benefits she used to enjoy, and she anticipates this trend to continue in

subsequent years.

65.     That as a result of the foregoing, plaintiff has been damaged in the amount of

FOUR MILLION DOLLARS ($5,000,000.00), or an amount to be determined at trial that

exceeds the jurisdictional limitations of all lower courts.

66.     Plaintiff additionally seeks attorney's fees pursuant to the ADEA, as amended, 29

U.S.C. §621 et seq.

## VI

## SECOND CAUSE OF ACTION

67.     Plaintiff repeats and realleges each and every allegation contained in paragraphs

numbered "1" through "66" with the same force and effect as if more fully set forth

herein.

68.     That this action falls within one or more of the exemptions set forth in CPLR

§1602.

69.     In wrongfully terminating plaintiff, defendants have unlawfully discriminated

against plaintiff in the workplace on the basis of her age in violation of New

York Executive Law, §290 et seq.

70.     Defendants have discriminated against plaintiff on the basis of her age race

and intentionally, willfully and without justification, acted to deprive her, on the grounds of her age, her rights, privileges and immunities, particularly of her right to be free of discrimination on the basis of her age. Defendants have a duty to provide and ensure a workplace for Plaintiff and other older employees free of innuendo, intimidation and discriminatory animus, and to enforce the rules, regulations and laws necessary to protect her and other older employees from unlawful termination.

71.     The defendants, despite knowledge and adequate opportunity to learn of the misconduct of the agents, supervisors and employees, adopted, approved and ratified these acts, omissions and misconduct.

72.     Plaintiff has and will continue to suffer irreparable injury, loss of backpay and frontpay, including loss of income, loss of promotion opportunity, loss of pay raises, loss of employee benefits, including sick time, health benefits, pension, vacation time and seniority, and psychological trauma, mental anguish and humiliation for being terminated as a result of false allegations of patient abuse as a result of defendants' discriminatory practices unless and until this Court grants relief.

73.     Although Plaintiff has attempted to mitigate her damages in continuing to work, her overall salary has lessened in subsequent years since her termination, and she is deprived of the benefits she previously enjoyed, and Plaintiff anticipates this trend to continue in subsequent years.

74.     That as a result of the foregoing, plaintiff has been damaged in the amount of FIVE MILLION DOLLARS ($5,000,000.00), or an amount to be determined at trial that exceeds the jurisdictional limitations of all lower courts.

PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

(a) declaring that the acts and practices complained of herein are in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. §621-634, et seq., The Older Workers Protection Act, 42 U.S.C. §1981a, 42 U.S.C. §1983, 42 U.S.C. §1985, the First and Fourteenth Amendments, New York Executive Law;

(b) enjoining and permanently restraining these violations of the Age Discrimination Employment Act, 42 U.S.C. §1983, 42 U.S.C. §1985, the First and Fourteenth Amendments, and New York Executive Law;

(c) directing defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated and to not continue to affect plaintiff's employment opportunities, including allowing the Plaintiff to be rehired or to be ordered frontpay;

(d) awarding plaintiff the costs of this action together with reasonable attorney's fees under the First Cause of Action provided by the Age Discrimination in Employment Act and 42 U.S.C. §1988;

(e) directing defendants to pay plaintiff compensatory damages and damages for loss of income, including loss of backpay and frontpay, including loss of income, loss of promotion opportunity, loss of pay raises, loss of employee benefits, including sick time, health benefits, pension, vacation time, loss of seniority, and liquidated damages associated with her termination from employment in the First Cause of Action in the amount of FOUR MILLION DOLLARS ($5,000,000.00), or an amount to be determined at trial that exceeds the jurisdictional limitations of all lower courts.

(e) directing defendants to pay plaintiff compensatory damages and damages for loss

of backpay and frontpay, including loss of income, loss of promotion opportunity, loss of

pay raises, loss of employee benefits, including sick time, health benefits, pension,

vacation time, loss of seniority, psychological trauma, mental anguish and humiliation

associated with her termination from employment in the Second Cause of Action in the

amount of FIVE MILLION DOLLARS ($5,000,000.00), or an amount to be determined

at trial that exceeds the jurisdictional limitations of all lower courts.

(f)  and granting such other and further relief as this Court deems necessary and

proper.

## DEMAND FOR A TRIAL BY JURY

Pursuant to 42 U.S.C. §1981A and Rule 38(b) of the Federal Rules of Civil Procedure,

Plaintiff demands a trial by jury in this action.

Dated:  New York, New York
March 4, 2016

Yours, etc.

Timothy P. Devane (TD 8903)
Attorney at Law
Attorney for Plaintiff
HUGUETTE FLORESTAL
244 Fifth Avenue, Suite T235
New York, New York 10001
(646) 573-4985
devanelaw@yahoo.com

# EXHIBIT A



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### New York District Office

33 Whitehall Street, 5th Floor
New York, NY  10004-2112
(212) 336-3620
TTY (212) 336-3622
General FAX (212) 336-3625

# DETERMINATION

**Charge No: 520-2014-00777**

**Charging Party**
Huguette Florestal
26 A Van Buren Street
Brentwood, NY 11717

**Respondent**
Woodbury Center for Healthcare
8533 Jericho Turnpike
Woodbury, NY 11797
Attention:  Madeline Moritz, Administrator

On behalf of the U.S. Equal Employment Opportunity Commission ("Commission"), I issue the following determination on the merits of the subject charge filed under the Age Discrimination in Employment Act of 1967, as amended ("ADEA"). Woodbury Center for Healthcare ("Respondent") is an employer within the meaning of the ADEA. All requirements for coverage have been met.

Charging Party alleges that Respondent discriminated against her on the basis of her age (57). Charging Party asserts that she was employed by Respondent as a Certified Nursing Assistant (CNA) from March 16, 1998 until March 18, 2013. Charging Party claims that on March 3, 2013, she and another CNA were assisting a patient who was on anti-psychotic medication. She instructed the patient to "turn, turn, keep turning," but the patient responded, "Stop screaming at me! Bitch!" The patient reported Charging Party to the nurse alleging that she had screamed at her. As a result, Mrs. Maurine, Director of Nursing Services, switched Charging Party to a different floor and suspended her for two days. On her second day of suspension, Mrs. Maurine called her at home and told her, "I just found out that you had abused a patient, you are terminated." Respondent then reported the incident to the state. Charging Party believes that Respondent used false allegations of abuse to terminate her due to her age.

Respondent denies that it discriminated against Charging Party due to her age. Respondent claims that Charging Party was terminated after a facility investigation of resident abuse that was called into the NYS Department of Health. It provides a report of disciplinary action dated March 4, 2013, presented to Charging Party for "inappropriately speaking to a resident and a signed copy of her sensitivity training"  that took place on March 6, 2013.

The Commission has reviewed the evidence submitted by both parties. Based upon a review of the evidence obtained by the Commission during the investigation of this Charge, the Commission has determined that there is reasonable cause to believe Charging Party's allegation that Respondent terminated her employment because of her age. It is uncontested that Charging Party was a 57 year old employee who had worked for Respondent for 15 years. Prior to the March 3, 2013 incident of alleged abuse, there were no documented performance issues, nor any indication of inappropriate conduct or resident abuse attributed to Charging Party. Respondent fails to provide any documentation, whatsoever, for its position that the abuse

occurred, or if it did, that it was of a terminable severity. Accordingly, Charging Party's contention that her age was a factor remains unchallenged. As such, evidence supports an inference that age was a factor in Charging Party's discipline, suspension, and termination, in violation of the ADEA.

This Determination is final. Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation.  Therefore, the Commission now invites you to join with it in reaching a just resolution of this matter.  Enclosed is a letter outlining the proposed terms of conciliation.

Disclosure of information obtained by the Commission during the conciliation process may only be made in accordance with the ADEA and the Commission's Procedural Regulations.

If Respondent declines to enter into conciliation discussions, or when the Commission's representative is unable to secure an acceptable conciliation agreement, the Commission's Director shall so inform the parties in writing, advising them of the court enforcement alternatives available to the Charging Parties and the Commission.

On behalf of the Commission:

Kevin Berry
District Director

Date 10/30/15

# EXHIBIT B

 **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
For General Information: (800) 669-4000
TTY: (800)-669-6820
District Office: (212) 336-3620
General FAX: (212) 336-3625

**VIA EMAIL: devanelaw@yahoo.com**
**& U.S. MAIL**

Huguette Florestal
c/o Timothy P. Devane,
Attorney at Law
244 Fifth Avenue, Suite T235
New York, NY10001

**Re:    Huguette Florestal v. Woodbury Center for Health Care**
**EEOC Charge No. 520-2014-00777**

Dear Ms. Florestal:

The Commission has determined that efforts to conciliate this charge as required by the Age Discrimination in Employment Act ("ADEA") have been unsuccessful. This letter constitutes the notice required by § 1601.25 of the Commission's Procedural Regulations which provides that the Commission shall notify the parties in writing when it determines that further conciliation efforts would be futile or non-productive.

The Commission has also determined that it will not bring a lawsuit against the above named Respondent. The issuance of the enclosed Notice of Right to Sue under the ADEA concludes the processing of your charge by the Commission. If you decide to sue, you must file a lawsuit in Federal District Court within 90 days of receipt of this letter and Notice of Right to Sue.

On Behalf of the Commission:

_____                    _3/3/16_____
Kevin J. Berry                              Date
District Director

cc:   Huguette Florestal

enc.

Enclosure with EEOC
Form 161-A (11/09)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to
consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell
him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely
manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as
indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate
State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter
alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in
the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some
cases can be brought where relevant employment records are kept, where the employment would have been, or
where the respondent has its main office. If you have simple questions, you usually can get answers from the
office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or
make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
**before 7/1/10** – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above,
because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge
file, **please make your review request <u>within 6 months</u>** of this Notice. (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

EEOC Form 161-A (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE
*(CONCILIATION FAILURE)*

| | |
|---|---|
| To: **Huguette Florestal**<br>**26 A Van Buren Street**<br>**Brentwood, NY 11717** | From: **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |

☐    *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2014-00777** | **Maritza Rondon-Velazquez,**<br>**Investigator** | **(212) 336-3678** |

**TO THE PERSON AGGRIEVED:**

This notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

*Kevin J. Berry,*
**District Director**

3/3/16
*(Date Mailed)*

cc:   **Director of Human Resources**
     **WOODBURY CENTER FOR HEALTH CARE**
     **8533 Jericho Turnpike**
     **Woodbury, NY 11797**

     **Scott T. Baken, Esq.**
     **JACKSON LEWIS P.C.**
     **44 South Broadway, 14th Floor**
     **White Plains, NY 10601**

     **Timothy Devane**
     **TIMOTHY P. DEVANE ATTORNEY AT LAW**
     **244 Fifth Avenue, Suite T235**
     **New York, NY 10001**

VERIFICATION

Timothy P. Devane, an attorney duly admitted to practice in the Eastern District of New York and the Courts of the State of New York, verifies the truth of the following under the penalty of perjury:

That I have read the foregoing Complaint and the same is true to the best of my knowledge, ipon information and belief.  The basis of my knowledge is records and documents provided to me by the Plaintiff.  The reason this document is signed by me is that the Plaintiff does not reside in the same County where I maintain my office.

Dated: New York, New York
       March 4, 2016

Timothy P. Devane (TD8903)